Peter W. Billings, A0330
Gary E. Jubber, A1758
David N. Kelley, A9137
FABIAN & CLENDENIN,
  A Professional Corporation
Twelfth Floor
215 South State Street
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for the Official Committee of Unsecured Creditors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | Bankruptcy Nos. 02-22906 |
| --- | --- |
| | 02-22907 |
| SIMON TRANSPORTATION SERVICES, INC., DICK SIMON TRUCKING, INC., and SIMON TERMINAL, LLC, | 02-24874 |
| | (Chapter 11) |
| | [SUBSTANTIVELY CONSOLIDATED] |
| Debtors. | Honorable Glen E. Clark |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | COMPLAINT TO AVOID PREFERENTIAL TRANSFERS |
| Plaintiff, | |
| v. | Adversary No. _____ |
| IMPERIAL PREMIUM FINANCE, INC., a California Corporation. | |
| Defendant. | |

302684_1

The Official Committee of Unsecured Creditors (the "Committee") as the duly appointed and qualified representative of the consolidated bankruptcy estate of Simon Transportation Services, Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC, (the "Consolidated Estate") hereby complains of Imperial Premium Finance, Inc. (hereafter referred to as "Imperial Premium") as follows:

## PARTIES

1. The Committee was appointed in the Dick Simon Trucking, Inc. bankruptcy case (Case No. 02-22907). Pursuant to the Second Amended Joint Plan of Liquidation confirmed by *Order Confirming Joint Plan of Liquidation,* dated March 11, 2003, the Committee was appointed as the representative of the Consolidated Estate pursuant to 11 U.S.C. § 1123(b)(3)(A) and (B).

2. Defendant Imperial Premium is a California corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter and parties to this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A)(F) and (O), 11 U.S.C. §§ 544, 547 and 550, F.R. Bankr. P. 7001 and DU Civ. R. 83-7.1(a).

4. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A)(F) and (O).

5. Venue is proper in this court pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

6. On February 25, 2002 (the "Petition Date"), Simon Transportation Services Inc. ("STS") and Dick Simon Trucking, Inc. ("DST") filed separate voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah ("Bankruptcy Court"), Case Nos. 02-22906 GEC and 02-22907 GEC, respectively. Simon Terminal, LLC ("Simon Terminal") subsequently filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on March 26, 2002, Case No. 02-24874 GEC. The bankruptcy cases of STS, DST, and Simon Terminal (collectively referred to hereafter as the "Debtors") were jointly administered.

7. On March 11, 2003, the Bankruptcy Court executed its *Order Confirming Joint Plan of Liquidation*, pursuant to which all property of the Debtors' estates, including all Debtors' rights under Chapter 5 of the Bankruptcy Code, were vested in the Consolidated Estate under the exclusive control of the Committee.

8. The Committee was vested with all rights of a Chapter 11 trustee, including the right to avoid transfers and obligations pursuant to 11 U.S.C. §§ 544, 547.

9. On or about October 23, 2001, the Debtor, STS, and Imperial Premium entered into an agreement whereby Imperial Premium financed insurance on behalf of STS. A copy of the Finance Agreement Disclosure Statement and Security Agreement (the "Security Agreement") is attached hereto as Exhibit "A".

10. The Security Agreement grants a security interest in:

    a.    all money that is or may be due to Debtor because of a loss under the Policy that reduces the unearned premiums

    b.    Any return of the premium for the Policy; and

    c.    Dividends which may become due in connection with the Policy.

11.    The Committee believes that while Utah Code Annotated § 31A-21-305(3) does not require either the "filing of the premium finance agreement or the recording of a premium finance transaction" in order to perfect the validity of the agreement, it does not state that the security interest is automatically perfected without any further action.

12.    Upon information and belief, Imperial Premium did not perfect its security interest.

13.    Pursuant to the Agreement, and within ninety days prior to the Petition Date, Debtors made the following payments to Imperial Premium:

| | | |
|---|---|---|
| a. | 12/11/2001 | $ 540,030.28 |
| b. | 1/08/02 | $ 540,030.28 |
| c. | 1/28/02 | $ 540,030.28 |
| | **TOTAL** | **$1,620,090.84** |

A copy of the Customer Account History is attached hereto as Exhibit "B."

### FIRST CAUSE OF ACTION
**(Avoidance of Lien Pursuant to 11 U.S.C. § 544(a)(1))**

14.    The Committee incorporates and realleges the allegations of paragraphs 1 through 13 of this Complaint.

15.    Pursuant to 11 U.S.C. § 544(a)(1), the Committee has the rights and powers of a creditor who has obtained a judicial lien on the unearned premiums.

4

302684_1

16. Any unrecorded interests the Imperial Premium may have or claim in the unearned premiums pursuant to the Security Agreement are avoidable by the Committee pursuant to 11 U.S.C. § 544(a)(1).

17. The Committee is entitled to an order avoiding any security interest of Defendant in the unearned premiums.

## SECOND CAUSE OF ACTION
### (11 U.S.C. § 544(a)(2))

18. The Committee incorporates and realleges the allegations of paragraphs 1 through 17 of this Complaint.

19. Pursuant to 11 U.S.C. § 544(a)(2), the Committee has the rights and powers of a creditor who has obtained an execution against the debtor that is returned unsatisfied.

20. Any unrecorded interests the Imperial Premium may have or claim in the unearned premiums pursuant to the Security Agreement are avoidable by the Committee pursuant to 11 U.S.C. § 544(a)(2).

21. The Committee is entitled to an order avoiding any security interest of Defendant in the unearned premiums.

## THIRD CAUSE OF ACTION
### (11 U.S.C. § 547)

22. The Committee incorporates and realleges the allegations of paragraphs 1 through 21 of this Complaint.

23. Imperial Premium was a creditor of the Debtors.

302684_1

24.  Prior to the Petition Date, the Debtors made one or more transfers to Imperial Premium amounting to $1,620,090.84 (hereinafter referred to as the "Preferential Transfer").

25.  The Preferential Transfer was made by the Debtors to or for the benefit of Imperial Premium, a creditor.

26.  The Preferential Transfer was made by the Debtors to Imperial Premium for or on account of an antecedent debt owed by the Debtors before the Preferential Transfer was made.

27.  The Preferential Transfer was made by to Imperial Premium while the Debtors were insolvent.

28.  The Preferential Transfer was made on or within ninety (90) days before the Petition Date.

29.  The Preferential Transfer made by the Debtors to Imperial Premium enabled it to receive more than Imperial Premium would receive if:

   a) the case were a case under Chapter 7 of the Bankruptcy Code;

   b) the Preferential Transfer had not been made; and

   c) Imperial Premium received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

30.  The Preferential Transfer is avoidable by the Committee pursuant to 11 U.S.C. § 547 and Imperial Premium is liable to the Committee for the value of the Preferential Transfer pursuant to 11 U.S.C. § 550.

31.  The Committee is entitled to recover interest from Imperial Premium on the Preferential Transfer from the date of the filing of this adversary proceeding.

WHEREFORE, the Committee prays for the following relief:

A. For entry of an order avoiding any security interest Imperial Premium may have had in the unearned premiums pursuant to the Security Agreement;

B. For entry of an order declaring that the transfer to Imperial Premium is avoided as a preferential transfer pursuant to 11 U.S.C. § 547(b);

C. That pursuant to 11 U.S.C. § 550(a), the Committee is entitled to recover from Imperial Premium, for the benefit of the estate, the amount of $1,620,090.84 and is entitled to judgment against Imperial Premium in said amount.

D. For such other and further relief as the Court deems just and equitable.

DATED this 25th day of February, 2004.

Peter W. Billings
Gary E. Jubber
David N. Kelley
FABIAN & CLENDENIN,
  a Professional Corporation
Attorneys for the Official Committee of Unsecured Creditors

302684_1

# EXHIBIT "A"

05-004-474614-7
10/26

## PREMIUM FINANCE AGREEMENT
### DISCLOSURE STATEMENT AND SECURITY AGREEMENT
(CA License # 8782145 (IPCOO, Inc.))
(CA License # 9733825 (Imperial Premium F.Adams, Inc.))

**Imperial Premium Finance, Inc.**
160 Water Street, New York, NY 10038 (212) 428-8431 or (877) 902-4242
1300 East Shaw Ave, Suite 150, Fresno, CA 93710 (559) 248-3400 or (877) 902-4242
777 South Figueroa St, 14th Fl, Los Angeles, CA 90017 (213) 683-3600 or (877) 902-4242
Two Rincon Center, 121 Spear St, 2nd Fl, San Francisco, CA 94105 (877) 902-4242
One MacArthur Place, Suite R10, South Coast Metro, CA 92707 (714) 436-3601 or (877) 902-4242
520 Pike Street, Suite 2700, Seattle, WA 98101 (206) 344-3237 or (877) 902-4242

| | | | | | |
|---|---|---|---|---|---|
| A | TOTAL PREMIUMS | $ 6,305,425.00 | INSURED/BORROWER (Name, Address and Telephone Number) | | Acct. No. |
| B | CASH DOWN PAYMENT REQUIRED | $ 2,080,790.25 | Simon Transportation Services Inc<br>PO Box 26297 | | 801 924 7000 |
| C | AMOUNT FINANCED (The Amount of Credit Provided to Insured or on its behalf) | $ 4,224,634.75 | Salt Lake City<br>Email Address (optional) | UT | 84126 |
| D | FINANCE CHARGE (Dollar amount credit will cost) | $ 95,607.49 | ANNUAL PERCENTAGE RATE (Cost of Credit figured as a yearly rate) | 6.00 % | |
| E | TOTAL PAYMENTS (Amounts which will have been paid after making all scheduled payments) | $ 4,320,242.24 | PAYMENT SCHEDULE | | |

| Amount of Each Payment | Number of Payments | | | 1st Payment Due | Final Payment Due |
|---|---|---|---|---|---|
| | Annual | Qtly | Mthly | | |
| $540,030.28 | | | 8 | 11/19/2001 | 06/19/2002 |

### SEE PAGE 3 FOR SCHEDULE OF FINANCED POLICIES

**AGREEMENT OF INSURED** (JOINT AND SEVERAL, IF MORE THAN ONE)

THE UNDERSIGNED INSURED:

1. In consideration of the premium payments being financed by LENDER to the insurance companies listed on the SCHEDULE OF FINANCED POLICIES, or their representative, promises to pay to the order of LENDER the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE, subject to the provisions set forth in this Agreement.

2. Irrevocably appoints LENDER Attorney-in-fact with full authority, in the event of default, to (i) cancel the said policies in accordance with the provisions herein, (ii) receive all sums assigned to LENDER and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement.

**IMPORTANT NOTICE TO INSURED**

NOTICE: 1. Do not sign this Agreement before you read it or if it contains any blank spaces. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Keep your copy of this Agreement to protect your legal rights. 4. You can protect against the involuntary termination of this Agreement before signing. Under State law it is generally unlawful to sell without notice to this person.

NOTICE: See Pages 2 and 3 Additional Important Information.

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON PAGES 2 AND 3

10/23/01  X _[signature]_
DATE  SIGNATURE (AND TITLE) OF INSURED OR AGENT OR BROKER ON THEIR BEHALF (to extent permitted by Law)

WIC00780 (11/00)

**AGENT OR BROKER:** J Henry & Company
**BUSINESS ADDRESS**
1000 Brookfield, Ste 140

Memphis                    TN   38119
**TEL NO./E-MAIL ADDRESS**

The Undersigned Agent or Broker:

1. Represents and warrants as follows: (a) to the best of the undersigned's knowledge and belief, the insured's signature is genuine or, to the extent permitted by applicable Law, the undersigned Agent or Broker has been authorized by the insured to sign this Agreement on their behalf, (b) the insured has received a copy of this Agreement, (c) the scheduled Policies are in full force and effect and the premiums indicated therefore are correct, (d) the insured may cancel all scheduled policies immediately upon request, (e) none of the Policies scheduled in this Agreement are non-cancelable, and (f) the down payment as indicated in Box "B" and installments due on _____ have been collected and are being remitted by us.

2. Upon cancellation of any of the scheduled Policies, the undersigned Agent or Broker agrees upon demand to pay to LENDER or its assigns their commission on any unearned premium applicable to the cancelled Policies.

3. For California business, the undersigned agent will receive from LENDER $_____ for aiding in administration of premium finance agreement relating to the above premiums.

THE AGENT OR BROKER AGREES TO THE PROVISIONS ABOVE AND ON PAGE 2

10/23/2001   _[signature] Robert Koesler_
DATE   SIGNATURE AND TITLE OF AGENT OR BROKER
Chief Financial Officer

Page 1 of 3

## ADDITIONAL AGREEMENTS OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)

2. **Cancellation.** After the occurrence of a default in the payment of any money due the LENDER, or a default consisting of a transfer to a third party of any of the scheduled policies, LENDER may request cancellation of the insurance policies listed in the schedule upon expiration of 10 days written notice of intent to cancel (15 days in Utah, 18 days in Idaho), provided said default is not cured within such period, and LENDER may proceed to collect the entire unpaid balance due hereunder or any part thereof by appropriate legal proceedings. If any default results in the cancellation of the Policy, Insured agrees to pay a cancellation charge in accordance with applicable law (not applicable in NV).

4. **Money Received After Cancellation.** Any payment received after policy cancellation may be credited to the indebtedness due hereunder without any liability or obligation on the part of LENDER to request reinstatement of such cancelled policy. Any sum received from an insurance company shall be credited to the balance due hereunder; any surplus shall be paid over to the Insured; in case of deficiency, the Insured shall pay the same.

5. **Application of Payment.** If applicable law permits, all payments received by LENDER will be applied to the oldest invoice first. Any remaining amounts will be applied to late fees and other charges (if applicable), the remainder (if any) would be applied to any other outstanding amounts.

6. **Returned Check Charge.** If any payment made by check is returned because the Insured had no account or insufficient funds in the payor bank, Insured will be charged the maximum fee, if any, permitted under applicable law ($15 in NV).

7. **Default.** If any of the following happens:
   a. A payment is not made when it is due;
   b. A proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against me; or
   c. Insured fails to keep any promise the Insured makes in this Agreement.
   Insured will be in default; provided, however, that, to the extent required by applicable law, Insured may be held to be in default only upon the occurrence of an event described in clauses (a) above.

8. **Security.** To secure payment of all amounts due under this Agreement, Insured assigns LENDER a security interest in all right, title and interest to the Policy, including (but only to the extent permitted by applicable law):
   a. All money that is or may be due me because of a loss under the Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee);
   b. Any return of the premium for the Policy; and
   c. Dividends which may become due me in connection with the Policy.

9. **Right to Demand Immediate Payment in Full.** At any time after default, LENDER can demand and have the right to receive immediate payment (except to the extent otherwise provided by applicable law, in which case LENDER will have the right to receive such payment in accordance with such law) of the total unpaid balance due under this Agreement even if LENDER has not received any refund of unearned premium.

10. **Warranties.** Insured warrants to LENDER (a) to have received a copy of this Agreement and (b) if the Insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the Insured. The Insured represents that it is not presently the subject of or in contemplation of a proceeding in bankruptcy, receivership, or insolvency, or if it is a debtor in bankruptcy, the Bankruptcy Court has authorized this transaction.

11. **Early Payment.** At any time, Insured may pay the whole amount still unpaid. If Insured pays the full amount before it is due, Insured will be given a refund for the unearned Finance Charge computed by the method of refund as required by applicable law.

12. **Assignments.** Insured may not assign the Policy or this Agreement without LENDER's written consent. However, Insured does not need LENDER's written consent to add mortgagees or other persons as loss payees. LENDER may transfer its rights under this Agreement to anyone without Insured's consent. All of LENDER's rights shall inure to the benefit of LENDER's successors and assigns.

13. **Collection.** If money is due and Insured fails to pay, LENDER may collect the unpaid balance from me without recourse to the security interest granted under this Agreement.

14. **Late Charges.** Upon default in payment of any installments for not less than five days (or such greater number of days required by applicable law), Insured agrees to pay a late charge in accordance with applicable law. In no event shall such late charge exceed a maximum of 5% of such installment ($5 in Montana, 3% minimum in Alaska and Oregon).

15. **Finance Charge.** The finance charge begins to accrue from the effective date of this Agreement or the earliest inception date of the insurance Policy(ies) listed on the Schedule of Policies, whichever is earlier. If LENDER terminates this Agreement due to a default Insured will pay interest on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation and from said date until Insured pays the outstanding indebtedness in full to LENDER. To the extent permitted by applicable law, the Finance Charge may include a non-refundable agreement charge not to exceed $20 ($10 in AK, AZ and WA; $12.50 in UT).

16. **Attorney's Fees.** If LENDER hires an attorney (which is not a salaried employee) to collect any money Insured owes under this Agreement, Insured will pay that attorney's fees and other collection costs (including collectors' fees) if and to the extent permitted by applicable law (20% of outstanding balance maximum in NV).

17. **Agent or Broker.** The Agent or Broker named on the front of this Agreement is neither authorized by LENDER to receive installments payable under this Agreement nor is authorized to make any representations to Insured on LENDER's behalf (except to the extent expressly required by applicable law).

18. **Amendments.** If the insurance contract had not been issued at the time of the signing of this Agreement, and if the policies being financed are assigned risk policies or policies listed in a state fund, the policy numbers, if omitted herein, may be inserted in this Agreement after it has been signed.

19. **Effective Date.** This Agreement will not go into effect until it is accepted by LENDER in writing. In the State of California, Insured shall have the right to disavow this Agreement for ten (10) days after acceptance by LENDER if the Agreement contained any blank space when it was executed by Insured (or on Insured's behalf) and such blank space was subsequently filled in.

20. **Limitation of Liability.** Insured recognizes and agrees that LENDER is a lender and not an insurance company and that LENDER assumes no liability as an insurer hereunder. LENDER's liability for breach of any of the terms of this Agreement or the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of LENDER's gross negligence or willful misconduct.

21. **Governing Law.** The law of the State of the Insured's residence shall govern this Agreement, except for Colorado, Hawaii, Idaho and Wyoming Insureds this contract is governed by the laws of the State of New York.

22. **Signature and Acknowledgement.** Insured has signed and received a copy of this Agreement. If the Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of the Insured. All the Insureds listed in any Policy have signed. Insured acknowledges and understands that insurance premium financing law does not require an Insured to enter into a premium financing agreement as a condition of the purchase of any insurance policy.

23. **California Insured.** FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.

Page 3 of 3

| Policy Number and Prefix (Itemized) | Place (X) If Not Authorized (See #4 below) | Full Name of Insurance Company and Name and Address of Policy Issuing Agent or Company Office To Which Premium is Paid and Notices are Sent | Type of Policy Premium | Anci Int. | Earn % Allman | Term in Mos. Cov. By Prem. | Effective Date M / D / Y | Policy Premiums |
|---|---|---|---|---|---|---|---|---|
| | | RLI Insurance Company*** Alpharetta, GA SECURITY RISK MANAGERS | AUT | | 0.0 | 12 | 10/19/2001 | 3,875,300.00 |
| | | United National Insurance Co.** Bala Cynwyd, PA SECURITY RISK MANAGERS | XS | | 55.0 | 12 | 10/19/2001 | 2,430,125.00 |

*(AR=ASSIGNED RISK), (A=AUDITABLE), (LS=LOSS SENSITIVE)

TOTAL PREMIUMS (Record in "A") **6,305,425.00**

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF BROKER OR AGENT

4. Warrants that this is the authorized Policy Issuing agent of the insurance companies or the broker placing the coverage directly with the insurance company on all the Policies scheduled except those indicated with an "X" above.
5. Warrants that there are no policies included in this Agreement which are subject to audit, report of values, retrospective rating, or minimum earned premium, except as indicated below, and that, if there are any, the deposit or provisional premium thereon is not less than the anticipated premium to be earned for the full term of the policy.
   Policy No.(s): _____ Minimum earned premium, if any: $ _____
6. Warrants that there are no assigned risk policies in the Schedule of Policies except as indicated in the Schedule of Policies.
7. The Agent or Broker will hold in trust for LENDER any payments made or credited to the Insured through the Agent or Broker directly, indirectly, actually or constructively, by any of the insurance companies listed in the Schedule of Policies and will pay the monies to LENDER upon demand to satisfy the then outstanding balance hereunder.
8. The Agent or Broker will promptly notify LENDER in writing if any information on this Agreement becomes inaccurate.

# EXHIBIT "B"

# Customer Account History

| | |
|---:|:---|
| Primary Insured: | Simon Transportation Services Inc |
| Account: | 05-004-474614-7 |
| Account Status: | Canceled |
| Date: | 12/16/2003 |

| Date | Event | Amount | Balance |
|---|---|---|---|
| 10/25/2001 | Original Contract | 6,401,032.49 | 6,401,032.49 |
| 10/25/2001 | Down Payment | (2,080,790.25) | 4,320,242.24 |
| 10/25/2001 | Current | 0.00 | 4,320,242.24 |
| 11/29/2001 | Late Fee Billed | 27,001.51 | 4,347,243.75 |
| 11/30/2001 | Intent to Cancel | 0.00 | 4,347,243.75 |
| 12/11/2001 | Installment Payment | (540,030.28) | 3,807,213.47 |
| 12/11/2001 | Current | 0.00 | 3,807,213.47 |
| 12/31/2001 | Late Fee Billed | 27,001.51 | 3,834,214.98 |
| 01/02/2002 | Intent to Cancel | 0.00 | 3,834,214.98 |
| 01/08/2002 | Installment Payment | (540,030.28) | 3,294,184.70 |
| 01/08/2002 | Current | 0.00 | 3,294,184.70 |
| 01/28/2002 | Installment Payment | (540,030.28) | 2,754,154.42 |
| 03/01/2002 | Late Fee Billed | 5,786.04 | 2,759,940.46 |
| 03/04/2002 | Intent to Cancel | 0.00 | 2,759,940.46 |
| 03/20/2002 | Installment Payment | (540,030.28) | 2,219,910.18 |
| 04/19/2002 | Installment Payment | (540,030.28) | 1,679,879.90 |
| 05/21/2002 | Cancelled | 0.00 | 1,679,879.90 |
| 05/21/2002 | Current | 0.00 | 1,679,879.90 |
| 08/05/2002 | Late Fee Payment | (27,001.51) | 1,652,878.39 |
| 08/05/2002 | Late Fee Payment | (27,001.51) | 1,625,876.88 |
| 08/05/2002 | Late Fee Payment | (5,786.04) | 1,620,090.84 |

| 08/05/2002 | Partial Payment | (364,520.45) | 1,255,570.39 |
| 09/11/2002 | Partial Payment | (1,255,570.39) | 0.00 |